UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZURICH AMERICAN INSURANCE COMPANY,
as successor by merger to MARYLAND
CASUALTY COMPANY,

       Plaintiff,

v.                    Case No. 8:16-cv-729-T-33AAS

EUROPEAN TILE AND FLOORS, INC.,
and ROBERT A. DALZELL, INC.,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff
Zurich American Insurance Company's Motion for Summary
Judgment (Doc. # 57), which was filed on January 31, 2017.
Defendant Robert A. Dalzell, Inc. filed a Response in
Opposition to the Motion (Doc. # 67) on March 20, 2017, to
which Zurich replied (Doc. # 70) on March 30, 2017. As
explained below, the Motion is denied.

## I. **Background**

### A. **Zurich Insures European Tile and Floors, Inc.**

Maryland Casualty Company (now Zurich) issued four
policies of primary commercial general liability and umbrella
liability insurance to European Tile and Floors, Inc. that
were in effect from July 18, 2005, until February 17, 2009.
(Doc. # 57-7 - 57-10). Each primary policy is subject to a $1
million limit for personal and advertising injury, $1 million

each occurrence, and $3 million general aggregate. (<u>Id.</u>). Each umbrella policy is subject to a $1 million limit per occurrence and in the aggregate. (<u>Id.</u>; Doc. # 36 at ¶ 27). The primary policies effective July 18, 2007, to July 18, 2008, and July 18, 2008, to February 17, 2009, are subject to an exclusion for TCPA lawsuits. (Doc. # 36 at ¶ 32).

The Zurich primary policies are subject to the following requirements:

2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit

b.  If a claim is made or "suit" is brought against any insured, you must:
    (1) Immediately record the specifics of the claim or "suit" and the date received; and
    (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:
    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    (2) Authorize us to obtain records and other information;
    (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

> d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior consent.

(<u>Id.</u> at ¶ 33). The Zurich umbrella policies contain substantially similar language. (<u>Id.</u>).

## B. <u>Dalzell Files the Underlying TCPA Action</u>

Mark William Ellis opened European in 2000 and served as the president of the corporation. (Ellis Depo. Doc. # 57-3 at 8). In June of 2006, Ellis received a fax solicitation from "Business to Business Solutions" for advertizing services. (<u>Id.</u> at 11, 20). Ellis retained the company and paid $422 to send 5,000 faxes "randomly." (<u>Id.</u> at 11-13, 18). He explained, "at that time I didn't know it was illegal." (<u>Id.</u> at 11-12). He thought that he was getting a really great deal. (<u>Id.</u>).

Robert A Dalzell, Inc. received one of the unsolicited faxes on June 22, 2006, and brought a putative class action lawsuit against Ellis and European for illegal fax blasting in 2009. (<u>Id.</u> at 21, 32-33). According to Robert Dalzell: "I got a fax I didn't ask for and that's pretty much it." (Dalzell Depo. Doc. # 57-4 at 8). Dalzell was "sick and tired of getting [unsolicited] faxes." (<u>Id.</u> at 35).

Ellis testified that he "knew [he] had insurance," and he

3

accordingly "contacted Zurich, who was [his] insurance carrier, and spoke with someone in customer service about the suit, and they referred to the policy and said that I wasn't covered under the policy." (Ellis Depo. Doc. # 57-3 at 21-22). Ellis testified that a Zurich representative, referring to specific pages of the insurance policy, told Ellis over the phone that "fax lawsuits are excluded." (Id. at 23).

Zurich's mass litigation claims specialist, Adam McCabe, testified in a Rule 30(b)(6), Fed. R. Civ. P., deposition that, in 2009, (at the time Dalzell sued European), Zurich maintained a call center for Zurich's insureds "to submit [] claim[s] via telephone." (McCabe Depo. Doc. # 57-11 at 51, 53). Zurich's call center employees used a system called "EZ Access" to set up claims over the telephone. (Id. at 54). At the relevant time, Zurich also accepted claims via fax and email. (Id. at 57). McCabe testified that he only became aware of the Dalzell lawsuit in 2016. (Id. at 8). He was not able to locate any documents reflecting that Ellis contacted Zurich upon being sued by Dalzell. According to McCabe, "there may not have been a call." (Id. at 56). And he testified: "I don't believe there is any evidence whether there was a call or wasn't a call." (Id. at 57).

Ellis contacted Jeff Baughman, Esq., an attorney who had

approximately one year of experience at the time, and engaged Baughman to be his attorney. (Ellis Depo. Doc. # 57-3 at 22, 24). Baughman represented Ellis and European until they "ran out of money" and thereafter, Ellis "appeared without counsel." (Id. at 25, 28). Ellis recalled that the lawsuit was "very lengthy and expensive." (Id. at 27).

Dalzell's lawsuit against Ellis and European was filed on August 28, 2009, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County. (Doc. # 36 at ¶ 7). The Complaint sought relief on behalf of all persons who (1) within four years prior to the date of the complaint (2) were sent telephone facsimile messages of material advertising the property, goods, or services of Ellis and European, (3) with whom they did not have prior express permission, and (4) with whom they did not have an established business relationship. (Id.). Dalzell's Complaint alleged Telephone Consumer Collection Protection Act and conversion claims. (Id.).

Although Dalzell's Complaint was served on European and Ellis on September 3, 2009, no responsive pleading was filed until two years later, on November 7, 2011. (Id. at ¶ 8). On March 10, 2011, Dalzell filed a motion seeking class certification, which Baughman successfully defeated at a hearing held on May 10, 2011. (Baughman Depo. Doc. # 57-2 at

49). Thereafter, Baughman withdrew as European's counsel based on "fundamental differences" with European. (Doc. # 57-2 at 252). After Baughman's withdrawal, Dalzell filed a renewed motion for class certification, which was granted as unopposed on November 4, 2011. (Samore Rpt. Doc. # 57-5 at 5).

Thereafter, Dalzell filed a Motion for Summary Judgment based on 4,278 facsimile transmissions to the class. (Doc. # 36 at ¶ 14). Neither Ellis nor European opposed Dalzell's Motion for Summary Judgment and that Motion was granted. (Id. at ¶ 15). On July 9, 2015, a Final Judgment was entered against European only in the amount of $2,139,000 (4,278 fax recipients multiplied by $500) plus an additional $909,975.60 in prejudgment interest and costs. (Id. at ¶ 17). No appeal was filed. (Id. at ¶ 20).

Thereafter, Dalzell's attorney decided to "go[] after the insurance company" - Zurich. (Ellis Depo. Doc. # 57-3 at 43). Dalzell filed a second lawsuit, this time against Zurich in the Circuit Court of Cook County, Ilinois, to collect on the multimillion dollar judgment. (Doc. # 36 at ¶ 23). On February 29, 2016, Zurich contacted Ellis to ask for his personal assistance in defending Zurich against Dalzell's Illinois lawsuit. (Ellis Depo. Doc. # 57-3 at 66). During his deposition, Ellis explained that he lost all of his "dreams"

6

including his flooring business and his beach house and had to
file for bankruptcy. (Id. at 42). Nevertheless, Ellis offered
to do anything that he could to assist Zurich. (Id. at 67).
In 2016, Zurich offered to appoint defense counsel to try to
vacate the judgment. (Id. at 66-67). But, at that point in
time, European was out of business and Ellis had received a
bankruptcy discharge. (Samore Rpt. Doc. # 57-5 at 3). Ellis
did not stand in the way of Zurich's attempt to vacate the
judgment, but he also did not jump at the chance to assist
Zurich in its quest to fight the 2015 judgment against
European. (Ellis Depo. Doc. # 57-3 at 67).

### C. **Zurich's Present Suit**

On March 24, 2016, Zurich filed suit in this Court
against European and Dalzell. (Doc. # 1). On May 9, 2016,
Zurich filed its First Amended Complaint containing the
following counts: breach of contract against European (Count
I); Declaratory Judgment against European and Dalzell for "No
Coverage Based on Insureds' Breach of Notice and Cooperation
Conditions" (Count II); Declaratory Judgment Against European
and Dalzell for "No Coverage Obligation Based on Violation of
Statutes Exclusion" (Count III); Declaratory Judgment against
European and Dalzell for "No Coverage Based on Violation of

7

Communication or Information Law Exclusion" (Count IV); and Declaratory Judgment Against European and Dalzell for "No Duty to Indemnify Based on No Property Damage or Personal and Advertizing Injury Caused by an Offense During the Policy Period" (Count V). (Doc. # 36).

Zurich explains that it did not name Ellis as a Defendant because Ellis received a complete discharge from all liability in his bankruptcy proceedings, which occurred between 2013-2014. (Id. at ¶¶ 3, 18-19). Dalzell filed its Answer and Affirmative Defense on August 8, 2016. (Doc. # 51). The single affirmative defense states: "To the extent that Zurich relies on an exception or exclusion to coverage and that exception or exclusion was added to a renewal policy, and Zurich failed to provide sufficient notice of the reduction in coverage, the reduction in coverage is invalid and the original policy's terms apply." (Id. at 10-11). European did not respond to the Complaint or the Amended Complaint. The Clerk entered a Rule 55(a), Fed. R. Civ. P., Default against European with respect to the Complaint on April 29, 2016. (Doc. # 31).

On January 31, 2017, Zurich filed a Motion for Summary Judgment as to Counts I (breach of contract against European)

and Count II (declaratory judgment against European and Dalzell for no coverage based on breach of notice and cooperation policy provisions). (Doc. # 57). Dalzell responded to the Motion, but European did not, as it has been defaulted. (Doc. # 67). Zurich filed a Reply on March 30, 2017. (Doc. # 70).

On May 15, 2017, the parties filed their Motions in Limine. (Doc. ## 71, 72). Those Motions are ripe (Doc. ## 73, 75) and will be addressed via separate Order.

## II.  Summary Judgment Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g

<u>Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if
it may affect the outcome of the suit under the governing law.
<u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir.
1997).  The moving party bears the initial burden of showing
the court, by reference to materials on file, that there are
no genuine issues of material fact that should be decided at
trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256,
1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 323 (1986)).  "When a moving party has discharged
its burden, the non-moving party must then 'go beyond the
pleadings,' and by its own affidavits, or by 'depositions,
answers to interrogatories, and admissions on file,' designate
specific facts showing that there is a genuine issue for
trial."  <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590,
593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations
or evidence, the non-moving party's evidence is presumed to be
true and all reasonable inferences must be drawn in the non-
moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344
F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder
evaluating the evidence could draw more than one inference
from the facts, and if that inference introduces a genuine

issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

III. **Analysis**

     The issue presented on summary judgment is whether European's alleged failure to give proper notice to Zurich of the Dalzell lawsuit and European's alleged failure to cooperate with Zurich preclude coverage.  The parties agree that Florida law applies and this Court agrees.  In diversity cases, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). And this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).  See also Spaulding Decon, LLC v.

<u>Crum & Foster Specialty Ins. Co.</u>, 158 F. Supp. 3d 1293, 1297 (M.D. Fla. 2016)(applying Florida law to diversity insurance dispute).

**A.    <u>Notice of the Dalzell Action to Zurich</u>**

Notably, on July 13, 2007, a district court analyzed an insurance policy similar to the applicable Zurich policy and concluded: "Under Florida law, advertizing injury coverage for 'oral or written publication of material that violates a person's right of privacy' does not extend to unsolicited facsimile transmissions of commercial advertisements. Transportation therefore does not have a duty to indemnify the plaintiffs for Southeast's violations of the TCPA." <u>Penzer v. Transp. Ins. Co.</u>, 509 F. Supp. 2d 1278, 1288 (S.D. Fla. 2007). That decision was in effect at the time Dalzell sued European in 2009.  However, on May 11, 2010, the Eleventh Circuit reversed that decision and explained that, after certifying the question to the Florida Supreme Court, "under Florida law, the language of this insurance provision provides coverage for infringements of the TCPA." <u>Penzer v. Transp. Ins. Co.</u>, 605 F.3d 1112, 1113 (11th Cir. 2010).

With a ruling from the Eleventh Circuit and the Florida Supreme Court regarding coverage for "advertizing injuries"

stemming from unsolicited fax transmissions, Zurich seeks to avoid making any payments to under the theory that its insured -- European -- breached the insurance policy.  In its Motion for Summary Judgment, Zurich argues: "European's failure to provide any  -- let alone timely -- written notice to Zurich of the Underlying TCPA Action is a breach of the policies' express notice condition which has resulted in prejudice to Zurich, entitling it to summary judgment as a matter of Florida law." (Doc. # 57 at 14).

Zurich supplies the Court with a catalog of cases holding that failure to comply with a policy provision requiring timely notice of a suit establishes a basis for denial of coverage.  <u>See</u>, <u>e.g.</u>, <u>Gemini II Ltd. v. Mesa Underwriters Speciality Ins. Co.</u>, 592 Fed. Appx. 803, 806 (11th Cir. 2014)(affirming summary judgment finding of no coverage when it was "undisputed that [the insured] *never* provided [the insurer] with notice of the occurrence or claim that allegedly triggered coverage, the initial suit brought by Gemini against [the insured], or the default judgment entered against [the insured].")(emphasis in original); <u>Yacht Club on the Intercoastal Condo. Ass'n v. Lexington Ins. Co.</u>, 599 Fed. Appx. 875, 878 (11th Cir. 2015)(notice to insurance company of hurricane damage to property was not "prompt" as required by

the policy when provided four years and seven months after the damage giving rise to the claim occurred); <u>Nat'l Tr. Co. v. Graham Bros. Constr.</u>, 916 F. Supp. 2d 1244, 1257 (M.D. Fla. 2013)("Under Florida law, an insured's failure to provide 'timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.'")(citing <u>Ideal Mut. Ins. Co. v. Waldrep</u>, 400 So. 2d 782, 785 (Fla. 3d DCA 1981)).

"Most Florida cases treat the issue in a two step manner, in which consideration must first be given to whether the insured's notice was untimely." <u>Id.</u> If the notice was untimely, a presumption of prejudice arises, and "the insured can only prevail by rebutting the presumption and demonstrating that no prejudice in fact occurred." <u>Id.</u> (citing <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, No. 10-cv-62028, 2012 U.S. Dist. LEXIS 40503, at *4 (S.D. Fla. Mar. 26, 2012)). "The insured's burden is to show by competent evidence that the insurer has not been substantially prejudiced by the lack of notice or the untimely notice." <u>Id.</u>

However, under Florida law, "one can waive the written notice requirement when the carrier had actual notice of the claim." <u>Gay v. Assoc. Cas. Ins. Co.</u>, 103 So. 3d 1028, 1031 (Fla. 5th DCA 2012)(reversing and remanding summary judgment

14

order that was entered in favor of the insurance company in light of oral communications with insurance broker regarding settlement of a claim); <u>Moskowitz v. State Farm Mut. Auto. Ins. Co.</u>, 646 So. 2d 262, 265 (Fla. 2d DCA 1994)(reversing and remanding summary judgment order that was in favor of insurance company and finding that insured could be "absolve[d] . . . from failure to follow the statutory requirement of written notice" based on an oral communication with insurance company's employee).

Summary judgment is not appropriate on the issue Zurich isolates in the Motion for Summary Judgment because there is a genuine dispute of material fact regarding when -- if ever -- European provided notice of the Dalzell suit to Zurich. Dalzell's position is that Ellis provided oral notice to Zurich of the Dalzell suit upon being served with the complaint and without any delay whatsoever. Zurich takes the opposite position -- claiming that European never provided it with notice of the suit, and that Zurich did not receive notice of the lawsuit until years after service of the Complaint and only after entry of the multimillion dollar judgment against its insured. According to Zurich, it was Dalzell, not Ellis or European, that notified Zurich of the underlying TCPA case and, at that point, it was too late to

defend. The Court is not in a position to make the necessary credibility determination.

The Court understands why Zurich relies upon <u>Gemini II Ltd.</u> and <u>Yacht Club on the Intercoastal Condo. Ass'n</u>. These Eleventh Circuit cases are certainly binding, but were decided on undisputed facts regarding the insured's failure to provide timely notice of a claim to the insurer. Here, there is a material dispute regarding the timing and the form of the provision of notice to Zurich. Zurich's arguments in favor of summary judgment are focused on alleged prejudice from not receiving notice of the lawsuit until <u>after</u> entry of judgment, but these arguments are predicated upon a factual finding that has not been made. It will be up to the finder of fact to determine whether or not Zurich received oral notice at the inception of the underlying suit, in accordance with Ellis's testimony.

The Court takes note of Zurich's argument that Ellis's testimony that he provided oral notice of the suit to Zurich is "self-serving" and uncorroborated. Zurich indicates: "Courts routinely hold that a person's testimony standing alone - without any other corroborating evidence - does not create a substantial conflict in evidence and thus does not give rise to a triable issue of fact." (Doc. # 70 at 11).

16

Interestingly, Zurich cites to <u>United States v. Davis</u>, 809 F.2d 1509 (11th Cir. 1987). But, there, the Eleventh Circuit emphasized that "[i]t is the function of the jury to observe demeanor and listen to testimony in order to determine the credibility of witnesses" and clarified that a court can discount "unsupported, self-serving testimony" when "there exists overwhelming direct evidence to contradict the self-serving testimony" or when the testimony is "so fantastic, so internally inconsistent, or so speculative that it ha[s] no probative value." <u>Id.</u> at 1512-13. Ellis's testimony is not so dubious as to fall into these categories.

First, the Court does not see how Ellis's testimony is "self-serving" because Ellis is not a party to this lawsuit, he is not named on the judgment, and he has been discharged of all financial responsibility for the relevant lawsuit through bankruptcy proceedings. Furthermore, his company, European, is no longer in business. As explained by Zurich's own expert: "European Tile Inc. was subject to foreclosure and ceased operations in 2010. It had no assets and was administratively dissolved in 2013. That same year, Ellis filed for bankruptcy and was discharged by U.S. Bankruptcy Court for the Middle District of Florida." (Samore Rpt. Doc. # 57-5 at 50). From the record before the Court, it does not appear Ellis has

anything to gain from his testimony. If Ellis's testimony
advances any entity's purposes, it is Dalzell, Inc., the
company that brought about Ellis's complete financial demise.
Thus, it is hard to follow Zurich's argument that Ellis's
testimony is "self-serving."

And, even if Ellis's testimony is somehow "self-serving,"
it is better to let a jury consider the disputed evidence and
make a finding of fact, rather than to simply discredit one
party's side of the story because it is not sufficiently
"corroborated." Zurich contends: "no reasonable jury could
find in Dalzell's favor that notice was provided by European
to Zurich prior to February 2016, when Dalzell sued Zurich
seeking to collect the underlying judgment." (Doc. # 70 at
13). The Court disagrees. Instead of usurping the role of
the jury, the Court determines that the fact-finders should
resolve the factual conflict presented. Although Zurich
contests Ellis's testimony, Zurich has not shown that
overwhelming direct evidence contradicts that testimony. Nor
has Zurich demonstrated that Ellis's testimony is fantastical,
speculative, or internally inconsistent such that it is
totally lacking in probative value.

The Court "must view all the evidence and all factual
inferences reasonably drawn from the evidence in the light

most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008). The Court denies motions for summary judgment when there is a genuine issue as to a material fact. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003).

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co., 802 F.2d 1352, 1356 (11th Cir. 1986). "Credibility determinations and the weighing of evidence are jury functions, and the jury should [be] allowed to decide whether it believe[s] [a party's] version of events." Jarmon v. Vinson Guard Servs., 488 Fed. Appx. 454, 457 (11th Cir. 2012). Accordingly, the Motion for Summary Judgment is denied to the extent that Motion is premised on the failure to properly and timely notify Zurich of the Dalzell lawsuit.

### B. Duty of Cooperation with Zurich

Zurich also asserts that Ellis had a duty to cooperate with Zurich in an attempt to challenge the multimillion dollar judgment years after entry of that judgment. And that Ellis's failure to cooperate prevents the provision of insurance

19

coverage. Zurich correctly explains that under governing Florida law, an insurer may deny coverage based on the insured's failure to cooperate. <u>Mid-Continent Cas. Co. v. Basdeo</u>, 477 Fed. Appx. 702, 706-07 (11th Cir. 2012). Specifically, "coverage may be denied so long as (1) the lack of cooperation was material, (2) the insurer exercised diligence and good faith in bringing about the cooperation of its insured and itself complied in good faith with the terms of the policy and (3) the lack of cooperation substantially prejudiced the insurer." <u>Id.</u> (internal citation omitted).

There are multiple unresolved factual issues that a jury must address before any analysis of these factors may begin. For instance, if the jury credits Ellis's testimony, how can Zurich show that it acted in good faith with the terms of the policy? Likewise, if the jury determines that Ellis provided timely oral notice of Dalzell's suit, how can Zurich now claim any prejudice? The Court cannot decide the cooperation issues presented in the Motion for Summary Judgment because the factual dispute regarding whether Ellis actually provided oral notice of the suit to Zurich in a timely manner, as elaborated upon above, is unresolved. The Court accordingly denies the Motion for Summary Judgment to the extent it is based on the insureds' alleged failure to cooperate.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Zurich American Insurance Company's Motion for Summary Judgment (Doc. # 57) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of June, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE